No. 25-1143

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

**TERRA WARGO,**
*Plaintiff-Appellant*,

v

**MJR PARTRIDGE CREEK DIGITAL CINEMA 14,**
*Defendant-Appellee.*

_____

On Appeal from the United States District Court
For the Eastern District of Michigan
The Honorable F. Kay Behm, Presiding
Case No: 22-12063

_____

**BRIEF OF DEFENDANT-APPELLEE**

**ORAL ARGUMENT REQUESTED**

_____

Submitted By:

Elizabeth L. Parker
Speaker Law Firm
819 N Washington Ave.
Lansing, MI 48906
(517) 482-8933
eparker@speakerlaw.com
*Attorney for Appellee*

Thomas H. W. Barlow
Kostopoulos Rodriguez, PLLC
550 W. Merrill St, Ste 100
Birmingham MI 48009
(248) 268-7800
tbarlow@korolaw.com
*Attorney for Appellee*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 25-1143            Case Name: Wargo v MJR Partridge Creek

Name of counsel: Elizabeth L. Parker

Pursuant to 6th Cir. R. 26.1, MJR Partridge Creek Digital Cinema 14

*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

NO

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

NO

CERTIFICATE OF SERVICE

I certify that on _____ August 7, 2025 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Elizabeth L. Parker

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

Corporate Disclosure Statement……………………………………………..……i

Index of Authorities…………………………………………………………...vi

Statement in Support of Oral Argument…………………………………..…viii

Statement of Jurisdiction………………………………………………..……ix

Statement of Issues………………………………………………………….x

Statement of the Case……………………………………………………1

Summary of the Argument……………………………..………………..14

Standard of Review……………………………………………………...16

Argument

I.     The district court correctly concluded that Wargo could not support her hostile work environment claim under ELCRA because the complained-of conduct was not so severe or pervasive that it altered the conditions of her employment…………………18

II.     The district court's dismissal of Wargo's claim of hostile work environment under ELCRA can also be affirmed on the alternative ground that MJR performed an adequate investigation of her complaints and took appropriate remedial action…....……23

III.     The district court correctly concluded that Wargo could not present a prima facie case of discrimination under either Title VII or ELCRA using either direct evidence or circumstantial evidence under the *McDonnell Douglas* burden shifting framework....27

    A.     The district court correctly concluded that Wargo could not establish a prima facie case of discrimination based on sex with direct evidence………………………………………………………28

    B.     The district court correctly concluded that Wargo could not establish a prima facie case of discrimination based on sex with direct evidence…..29

VI.    Even assuming that Wargo could present a prima facie case of discrimination, she cannot establish that the basis for her termination was pretextual, and thus, the district court's order granting summary judgment can be affirmed on this alternative ground…………………………………………………………………………...32

V.    The district court correctly concluded that Wargo failed to address causation as a necessary element of her retaliation claim under either Title VII or ELCRA as a matter of law……………………………………………………………………………34

VI.    The district court's dismissal of Wargo's retaliation claim can also be affirmed on the alternative ground that she cannot establish causation…………………………35

Conclusion……………………………………………………………………………38

Certificate of Compliance…………………………………………………………....I

Certificate of Service………………………………………………………………..II

Addendum…………………………………………………………………………..III

# TABLE OF AUTHORITIES

## Cases

*Adusumilli v. City of Chicago*, 164 F.3d 353 (7th Cir.1998)…………………………..20

*Alpert v. United States*, 481 F.3d 404 (6th Cir. 2007)…………………………………..29

*Anderson v Liberty Lobby, Inc.*, 477 U.S. 242 (1986)……………………………..16, 26

*Baker v. Blackhawk Mining, LLC*, 141 F.4th 760 (6th Cir. 2025)…………………..16

*Barrett v Kirtland Community College*, 245 Mich. App. 306; 628 N.W.2d 63 (2001)...34

*Baskerville v. Culligan Int'l Co.*, 50 F.3d 428 (7th Cir.1995)…………………………21

*Bishop v. Lucent Techs., Inc.*, 520 F.3d 516 (6th Cir. 2008)…………………………...16

*Black v. Zaring Homes, Inc.*, 104 F.3d 822 (6th Cir.1997)……………………………..20

*Blackie v Maine*, 75 F.3d 716 (1st Cir. 1996)…………………………………………..25

*Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304 (6th Cir. 1989)………...36

*Bouton v. BMW N. Am., Inc.*, 29 F.3d 103 (3rd Cir. 1994)……………………………24

*Brocklehurst v. PPG Indus.*, 123 F.3d 890 (6th Cir. 1997)……………………………33

*Brown v. VHS of Mich., Inc.*, 545 F. App'x 368 (6th Cir. 2013)…………………...35-36

*Brumley v UPS*, 909 F.3d 834 (6th Cir. 2018)…………………………………………35

*Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998)……………………………………30

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)………………………………………...16

*Chambers v. Trettco, Inc.*, 463 Mich. 297, 614 N.W.2d 910 (2000)………......18, 24, 25

*Chen v. Dow Chem. Co.*, 580 F.3d 394 (6th Cir. 2009)……………………………..28

iv

*Clark v. United Parcel Serv., Inc.*, 400 F.3d 341 (6th Cir. 2005)……………………...19

*Clayton v. Meijer, Inc.,* 281 F.3d 605 (6th Cir. 2002)………………………………....28

*Columbia Gas Transmission Corp. v. Limited Corp.,* 951 F.2d 110 (6th Cir.1991)…...17

*Creggett v. Jefferson Cty. Bd. of Educ.*, 491 F. App'x 561 (6th Cir. 2012)……………30

*Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914 (6th Cir. 2014)…………...30-31

*Downer v Detroit Receiving Hosp*, 191 Mich. App. 232; 477 N.W.2d 146 (1991)…….23

*DXS, Inc. v. Siemens Med. Sys.*, 100 F.3d 462 (6th Cir. 1996)…………………….....26

*Emmons v. McLaughlin,* 874 F.2d 351 (6th Cir.1989)…………………………….....17

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)…………………………….....19

*GenCorp, Inc. v. American Int'l Underwriters,* 178 F.3d 804 (6th Cir.1999)………....17

*Harris v. Metro. Gov't of Nashville & Davidson Cty.*, 594 F.3d 476 (6th Cir. 2010)…...33

*Hartsel v. Keys*, 87 F.3d 795 (6th Cir.1996)…………………………………………..33

*Hein v. All Am. Plywood Co.*, 232 F.3d 482 (6th Cir. 2000)…………………………...33

*Hogan v. Jacobson*, 823 F.3d 872 (6th Cir. 2016)…………………………………….23

*Huff v. Metropolitan Life Ins. Co.,* 675 F.2d 119 (6th Cir.1982)…………………........17

*Indest v. Freeman Decorating, Inc.*, 164 F.3d 258 (5th Cir.1999)……………………..27

*Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025 (5th Cir. 1980)………...33-34

*Johnson v. Kroger Co.*, 319 F.3d 858 (6th Cir. 2003)……………………………….29

*Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451 (6th Cir. 2004)………………....19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)………..16

*Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078 (6th Cir. 1994)……………..33

*McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973)……………………………..28

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000)………………..34

*Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75 (1998)…………………………....19

*Pena v. Ingham Cnty. Rd. Comm'n*, 255 Mich. App. 299, 660 N.W.2d 351 (2003)……………………………………………………………………………..25, 28

*Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir.1998)……………………....20

*Radtke v. Everett*, 442 Mich. 368; 501 N.W.2d 155 (1993)………………………18, 22

*Randolph v. Ohio Dep't. of Youth Servs.*, 453 F.3d 724 (6th Cir. 2006)……………...…18

*Sharp v. City of Houston*, 164 F.3d 923 (5th Cir. 1999)………………………………..31

*Shepherd v. Comptroller of Public Accounts of Texas*, 168 F.3d 871 (5th Cir.1999)….20

*Spengler v. Worthington Cylinders*, 615 F.3d 481 (6th Cir. 2010)……………………..32

*Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355 (10th Cir. 1997)……………………..20

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)…………………………………..33

*Stacy v. Shoney's Inc.*, 955 F. Supp. 751 (E.D. Ky. 1997)……………………………..24

*Tartt v. Wilson Co.*, 592 Fed. App'x. 441 (6th Cir. 2014)……………………………..27

*Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292 (6th Cir. 2016)……………………....29

*Thompson v. Skipper*, 981 F.3d 476 (6th Cir. 2020)………………………………………....23

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)…………………………..34

*Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333 (7th Cir.1993)………...…21

*West v Gen Motors Corp*, 469 Mich. 177; 665 N.W.2d 468 (2003)…………………...34

*White v. Burlington N. & Santa Fe Ry. Co.*, 310 F.3d 443 (6th Cir. 2002)……………31

**Court Rules**

Fed. R. Civ. P. 56(a)…………………………………………………………..16

Fed. R. Civ. P. 59(e)…………………………………………………………...17

Fed. R. Civ. P. 60(b)…………………………………………………………17

E.D. Mich. LR 7.1(h)(1)…………………………………………………....17

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Defendant-Appellee believes that oral argument will aid this Court in examining the legal issues presented, in particular where there are alternative grounds for affirming the challenged decision of the district court.

## STATEMENT OF JURISDICTION

Plaintiff Terra Wargo's complaint stated claims under Title VII which provided the district court with federal question jurisdiction pursuant to 28 U.S.C. 1331. The district court exercised supplemental jurisdiction over Wargo's state law claims pursuant to 28 U.S.C. 1367. The district court granted summary judgment of Wargo's complaint by opinion dated February 21, 2024, with judgment entered on that same date. (Opinion, RE 47, Page ID 662-691.). (Judgment, RE 48, Page ID 692.). Wargo timely sought reconsideration pursuant to Fed. R. Civ. P. 59(e) and LR 7.1(h) within 28 days of the entry of judgment, which was denied by opinion and order dated February 13, 2025. (Reconsideration motion, RE 50, Page ID 736-765). Wargo's Notice of Appeal was timely filed on February 14, 2025, pursuant to Fed. R. App. P. 3(a)(1) and Fed. R. App. P. 4(a)(1). (Notice of Appeal, RE 54, Page ID 893). This Court has jurisdiction of this appeal pursuant to 28 U.S.C. 1291.

# STATEMENT OF ISSUES

I.     Whether the district court correctly concluded that Wargo could not support her hostile work environment claim under ELCRA because the complained-of conduct was not so severe or pervasive that it altered the conditions of her employment?

II.    Whether the district court's dismissal of Wargo's claim of hostile work environment under ELCRA can also be affirmed on the alternative ground that MJR performed an adequate investigation of her complaints and took appropriate remedial action?

III.    Whether the district court correctly concluded that Wargo could not present a prima facie case of discrimination under either Title VII or ELCRA using either direct evidence or circumstantial evidence under the *McDonnell Douglas* burden shifting framework?

VI.    Whether, even assuming that Wargo could present a prima facie case of discrimination, she cannot establish that the basis for her termination was pretextual, and thus, the district court's order granting summary judgment can be affirmed on this alternative ground?

V.    Whether the district court correctly concluded that Wargo failed to address causation as a necessary element of her retaliation claim under either Title VII or ELCRA as a matter of law?

VI.    Whether the district court's dismissal of Wargo's retaliation claim can also be affirmed on the alternative ground that she cannot establish causation?

## STATEMENT OF THE CASE

Plaintiff Terra Wargo began working for MJR on November 29, 2015, in the Partridge Creek location in the concessions department and as an usher, when she was 17 years old. (Wargo Tr., RE 39-2, Page ID 268-269.). Wargo was promoted to Supervisor in the Summer of 2016 and Assistant Manager in April of 2017. She was promoted to a salaried, full-time manager in January of 2019 and held that position until the time of her termination. (Wargo Tr., RE 39-2, Page ID 269.).

In early 2021, Wargo applied and interviewed for the position of Partridge Creek General Manager. She did not receive the position and instead, Paul Finnigan, the General Manager at MJR's Chesterfield location was given the position. (Wargo Tr., RE 39-2, Page ID 270.). At that time, Wargo was offered the opportunity to move to the Chesterfield location and take the General Manager position, however, she declined the opportunity for promotion and elected to remain at Partridge Creek. (Wargo Tr., RE 39-2, Page ID 270.).

Paul Finnigan first began working at the Partridge Creek location in March of 2021 as General Manager. (Wargo Tr., RE 39-2, Page ID 270.). In October of 2019, MJR theaters were purchased by Kinepolis Group based in Belgium. (Kincaid Tr. (I), RE 39-3, Page ID 316.). As part of his transfer to Partridge Creek, Finnigan was tasked with implementing new procedures adopted by the new owner. (Hattle Tr., RE 39-5, Page ID 397.).

Before Wargo even met Finnigan, she began complaining about him, telling her co-worker Hannah Vennard, via text on April 2, 2021, that "I need to see how he interacts with me in person before I'm a bitch to him. LOL. Respect is earned, not demanded." (Wargo Tr., RE 39-2, Page ID 282.). She further stated via text message to Vennard on that same date, "I feel like he's been in a rut at Chesterfield and wants to reinvent himself here since no one knows him. If its really bad I will be confronting him and talking to Joel" and "I'm ready for the worst because we are already off to a bad start." (Wargo Tr., RE 39-2, Page ID 283.).

Further, Wargo began complaining about Finnigan in that same first week of his arrival to Matthew Schwartz - the GM that Finnigan was replacing - because she felt he was not speaking to the employees and other employees were expressing concerns to her about that. (Wargo Tr., RE 39-2, Page ID 270-270.). Schwartz reported Wargo's concerns to Joel Kincaid, Vice-President of Operations. (Kincaid Tr. (II), RE 39-4, Page ID 361-362.).

On April 20, 2021, Wargo texted Vennard asking whether Finnigan had given her some information regarding work. When Vennard indicated that he had not, Wargo replied "Damn it. Ron's not answering. I don't want to ask him", referring to Finnigan. (Wargo Tr., RE 39-2, Page ID 283.). When asked why she didn't want to ask Finnigan, she testified "I just didn't feel comfortable with him." (Wargo Tr., RE 39-2, Page ID 283.).

Soon thereafter, Wargo set up a meeting with Joshua Jenson, the Director of In-Theater Sales, purportedly to discuss certain operational and reporting changes, but Jenson realized that the real purpose of the meeting was to complain about Finnigan and he reported it to Kincaid also. (Wargo Tr., RE 39-2, Page ID 275.). (Kincaid Tr. (II), RE 39-4, Page ID 362.). In response, Kincaid approached Finnigan and spoke to him about his management style and how to handle the transition to the new team and new building. (Kincaid Tr. (II), RE 39-4, Page ID 362.). Wargo admitted that she did not complain to either Schwartz or Jenson about any perceived sexual harassment but rather, only about Finnigan's management style. (Wargo Tr., RE 39-2, Page ID 275.).

Roughly a month into Finnigan's tenure at Partridge Creek, he invited Wargo to meet at Bar Louie, a restaurant in the same Partridge Creek shopping center as the theater, via text message. (Wargo Tr., RE 39-2, Page ID 271.). (Text Messages, RE 39-6, Page ID 445-456.). Wargo testified that the text messages she provided in discovery are the only ones she bases her claims of "text-based" harassment. (Wargo Tr., RE 39-2, Page ID 275.). (Text Messages, RE 39-6, Page ID 445-456.). According to Wargo, the invitation was perceived by her to be harassing because while she had a social and friendly relationship with other GMs, she did not "have any relationship" with Finnigan and "he was still sending me these text messages and inviting me to the bar." (Wargo Tr., RE 39-2, Page ID 277-278.).

3

Wargo further texted Vennard on May 2, 2021 – only one month after Finnigan began at Partridge Creek – that "I still want to talk to Joel [Kincaid] but unless he's going to get rid of Paul is there even a point." (Wargo Tr., RE 39-2, Page ID 283.). On July 13, 2021, Finnigan asked Wargo to again meet him at Bar Louie via text message. (Text Messages, RE 39-6, Page ID 445-456.). Wargo refused and remained at MJR. When Finnigan came into MJR to speak with Wargo there, Wargo again refused to report to his office, claiming to be too busy with work. When she did finally join him in his office, Finnigan asked Wargo what her problem was with him. (Wargo Tr., RE 39-2, Page ID 273.).

Wargo testified that she told him that she felt he was lacking respect and communication with the employees. (Wargo Tr., RE 39-2, Page ID 273.). Wargo testified that Finnigan slammed down a piece of paper he was holding and she got up to leave the meeting, telling him the meeting wasn't productive. (Wargo Tr., RE 39-2, Page ID 273.). Wargo went to the office next door and was followed by Finnigan. According to Wargo, the argument continued, and she attempted to leave but Finnigan was standing in front of the door. She reached behind him and grabbed the door handle, pulling it into his back and opened the door and left the building. (Wargo Tr., RE 39-2, Page ID 273.) Wargo claims that Finnigan touched her during this meeting as he had his hand on her arm for 5 to 10 seconds. (Wargo Tr., RE 39-2, Page ID 272.).

4

The following day, Wargo reached out to Kincaid, asking for a meeting to report her concerns. (Wargo Tr., RE 39-2, Page ID 274.).(Text Message, RE 39-7, Page ID 457.). Wargo met with Kincaid and Melissa Hattle, Human Resources Manager for MJR, on July 15th, to discuss her concerns about Finnigan and the July 13th incident in particular. (Wargo Tr., RE 39-2, Page ID 275.). In advance of the meeting, Wargo emailed Kincaid a memo prepared by her along with Vennard detailing their concerns about Finnigan, including both his management style and her concerns about any sexually harassing or sexually discriminatory conduct. (Wargo Tr., RE 39-2, Page ID 275.). (Email, RE 39-8, Page ID 458.). (Memo, RE 39-9, Page ID 459-461.).

After the meeting, Wargo provided a written statement to Hattle detailing her complaints. In her report, she indicated that she felt she could not work in the same building as Finnigan and wanted him fired. (Wargo Tr., RE 39-2, Page ID 279.). (Email, RE 39-10, Page ID 462.). (Wargo complaint, RE 39-11, Page ID 463.). Following MJR's investigation, which included viewing the videos of the incident, Kincaid and Hattle determined that while there was no conduct which would qualify as "illegal, sexual harassment or other harassment, discrimination or threat of physical violence", both Wargo and Finnigan had engaged in performance-related misconduct and both received written warnings. Finnigan was also placed on a Performance Improvement Plan. (Hattle Tr., RE 39-5, Page ID 421-422.).(Investigative Summary, RE 39-12, Page ID 464.). (Wargo Written Warning, RE 39-13, Page ID 465.). (Finnigan PIP, RE 39-

5

14, Page ID 466-468.). Wargo was determined to have repeatedly refused to meet with Finnigan for discussions of work-related issues despite specific requests to do so, consistent with her admissions. (Kincaid Tr.(I), RE 39-3, Page ID 324.). In addition, both Wargo and Finnigan admitted to yelling during the meeting. Finally, Wargo was found to be not appropriately reporting personnel concerns and discussing them with her peers. (Kincaid Tr. (I), RE 39-3, Page ID 325.).

Nevertheless, due to her concerns about working with Finnigan, Wargo was offered and accepted the opportunity to transfer to a different MJR theater – MJR Marketplace – in the same position, with the same pay. (Wargo Tr., RE 39-2, Page ID 280.). Wargo testified that no verbal sexual harassment transpired outside of the text messages, however, she initially wasn't sure at her deposition if she had been subjected to verbal sexual discrimination. (Wargo Tr., RE 39-2, Page ID 272.). She then testified that there were two instances of verbal sexual discrimination by Finnigan, neither of which she actually heard but were told to her by others (Wargo Tr., RE 39-2, Page ID 272.).

On September 15, 2021, although she was no longer assigned to MJR Partridge Creek, Wargo went to the Patridge Creek theater, according to her, to meet with Vennard to assist her with some work-related tasks in the cash office. (Wargo Tr., RE 39-2, Page ID 283.). Wargo admitted that she was not aware of any reason Vennard couldn't have asked Finnigan for assistance and that she no longer had any work responsibilities at

Partridge Creek. (Wargo Tr., RE 39-2, Page ID 284.). While Wargo initially claimed she was in the office for less than an hour, she later admitted that it could have been as long as three hours. (Wargo Tr., RE 39-2, Page ID 284.).

Wargo further admitted that while in the Partridge Creek office for "possibly" up to three hours, contrary to directives given to her verbally and in writing on several occasions, she discussed personnel matters with Vennard and another employee who was in the office. In addition, she discussed personnel matters via text with the other employee. (Wargo Tr., RE 39-2, Page ID 284.). The other employee - Jocelyn Rizo-Llamas - quit the day after meeting with Wargo at Partridge Creek, after submitting a complaint claiming that Finnigan had "grabbed her butt". (Wargo Tr., RE 39-2, Page ID 284.).

According to Wargo, she was "possibly" assisting Vennard in preparing a complaint form for Rizo-Llamas during the three-hour meeting at Partridge Creek. Wargo claimed she did not report the complaint herself to MJR's HR department because Vennard was already doing so. (Wargo Tr., RE 39-2, Page ID 284.) In fact, Vennard had already submitted an email to HR on August 29, 2021 reporting employee concerns regarding Finnigan, several days before Wargo's three-hour meeting in the cash office. (Hattle Tr., RE 39-5, Page ID 393-394, 397.). (Email, RE 39-17, Page ID 474.). Hattle had already initiated her investigation by attempting to review relevant video footage but was unable to interview Rizo-Llamas because she quit soon thereafter.

(Hattle Tr., RE 39-5, Page ID 395-397.).

On September 16, 2021, Finnigan arrived at MJR Partridge Creek and found that his nameplate had been removed from his office door and was on the floor. In the course of attempting to determine what happened, he reviewed video footage and discovered that Wargo had been in the Partridge Creek cash office for approximately three hours the day prior with Vennard and Rizo-Llamas. On September 22, 2021, he submitted a complaint to MJR's HR department complaining about Wargo having gotten herself involved in the previously filed complaint from Rizo-Llamas. (Finnigan complaint, RE 39-16, Page ID 470-473.).

On September 27, 2021, Wargo was terminated by MJR for not following company policy. (Notice of Dismissal, RE 39-18, Page ID 475.). Hattle testified that Wargo was terminated because she was discussing confidential matters with peers and not reporting the allegations to the HR department, despite being advised multiple times of the need to adhere to proper reporting and maintain confidentiality of complaints. (Hattle Tr., RE 39-5, Page ID 412.). Kincaid confirmed that Wargo was terminated because she had been told not to discuss HR related issues with peers and continued to do so. Further, her three-hour visit to the cash office at Partridge Creek was contrary to the security of that office. "We had lost faith that she was trustworthy." (Kincaid Tr.(I), RE 39-3, Page ID 330-331.).

At the time of her hire, Wargo signed MJR's Non-Retaliation and Complaint Procedure, which directs employees to immediately report incidents they believe are harassing or discriminatory to their General Manager or, if the complaint relates to the General Manager, report to corporate headquarters. (Wargo Tr., RE 39-2, Page ID 268.).(Complaint procedure, RE 39-19, Page ID 476.). In addition, Wargo was advised by email by Melissa Hattle on July 19, 2021 that with regard to complaints of harassment and/or discrimination, "the most strict confidentiality is expected and required during any type of investigation. Breach of this confidentiality is a terminable offense." (Wargo Tr., RE 39-2, Page ID 278.). (Email, RE 39-20, Page ID 477.).[1]

Wargo initially testified that she had no discussions with anyone regarding complaints about Finnigan after July 19th outside of the context of MJR's investigation. (Wargo Tr., RE 39-2, Page ID 278.). However, she also admitted at her deposition that she discussed Rizo- Llamas's complaints about Finnigan with Rizo-Llamas before she quit MJR, "possibly" during the three-hour session at Partridge Creek and further, sent a text message to Rizo-Llamas on September 21, 2021 stating that "It makes me sick the lengths they will go to cover up for this man". (Wargo Tr., RE 39-2, Page ID 284-285.).

---

[1] Wargo was also advised in her written warning issued on August 9, 2021, but Wargo claims that the email she received from Hattle on September 20, 2021 was the first time she saw the written warning. However, she does admit to meeting with Kincaid and Hattle in August. (Wargo Tr., RE 39-2, Page ID 280.). (Wargo Tr., RE 39-2, Page ID 285.).

On or about February 9, 2022, Wargo filed a Charge of Discrimination with the Michigan Department of Civil Rights, claiming that her General Manager "followed me after work" and was "asking her out on dates". (Charge of Discrimination, RE 39-21, Page ID 478-479.). When asked about statements contained within it, Wargo also admitted that she discussed other personnel issues with Vennard, including issues about an employee that she believed Finnigan was dating and what they perceived as the lack of a timely response to the complaint filed by Vennard on behalf of Rizo-Llamas. (Wargo Tr., RE 39-2, Page ID 287-288.).

In addition to her belief that Finnigan engaged in sexually harassing and/or discriminatory conduct toward her, Wargo testified that Kincaid and Hattle also engaged in sexual harassment and/or discriminatory conduct toward her. (Wargo Tr., RE 39-2, Page ID 272.). As to Kincaid, Wargo believes that because Kincaid 1) sided with Finnigan before hearing anything she had to say, 2) told her that he wasn't going to fire Finnigan and that he would have fired her if he was in Finnigan's position, he engaged in discriminatory or harassing conduct. (Wargo Tr., RE 39-2, Page ID 272.). As to Hattle, Wargo claimed that the sexually harassing or discriminatory conduct was that: 1) she justified many of Finnigan's actions, 2) she said since Wargo left the building before her scheduled shift she could be terminated (which Wargo claimed was not true), 3) she stated she was doing her own investigation without Kincaid (which Wargo claimed is not true because Kincaid was involved in all aspects), and 4) she was siding with

Kincaid since he was her boss. (Wargo Tr., RE 39-2, Page ID 273.).

Wargo received a Notice of Right to Sue letter from the EEOC on June 2, 2022 and filed her complaint on August 31, 2022. (Complaint, RE 1, Page ID 1-19). Wargo's complaint alleged claims of "Gender/Sexual Harassment/Discrimination" under both the Elliot-Larsen Civil Rights Act (ELCRA) and Title VII, "Retaliation" under both ELCRA and Title VII and finally, a claim of "Hostile Workplace Environment" in violation of ELCRA.

MJR sought summary judgment of Wargo's complaint pursuant to Fed. R. Civ. P. 56(c) on several grounds. (Motion for Summary Judgment, RE 39, Page ID 230-479). The first challenged whether Wargo could establish a claim under ELCRA on a hostile work environment theory as the events described by her did not rise to the level of conduct recognized by the Sixth Circuit and others as sufficiently severe or pervasive as to alter the conditions of her working environment. (Motion for Summary Judgment, RE 39, Page ID 250-254).  The second challenged Wargo's ability to establish a prima facie case of discrimination based on sex under either ELCRA or Title VII for lack of either direct evidence or circumstantial evidence sufficient to demonstrate any discrimination based on her gender. (Motion for Summary Judgment, RE 39, Page ID 234-258).  MJR further argued that even assuming Wargo was able to present a prima facie case of discrimination, she could not establish that the basis for her termination was pretextual. (Motion for Summary Judgment, RE 39, Page ID 258-260). Finally,

11

MJR's motion argued that Wargo could not establish a claim of retaliation under either ELCRA or Title VII as a matter of law for lack of causation. (Motion for Summary Judgment, RE 39, Page ID 260-262).

Following argument on February 7, 2024 the district court granted MJR's motion and dismissed Wargo's complaint by opinion dated February 21, 2024. (Opinion, RE 47, Page ID 662-691).   In its decision, the district court concluded that with regard to Wargo's hostile work environment claim, accepting all of Wargo's claims about the complained-of conduct as true, the acts were not "sufficiently severe or pervasive" and instead, at best, "may have been bothersome". (Opinion, RE 47, Page ID 680, 682). The district court further found that Wargo failed to provide any evidence that a reasonable person could find that the alleged harassing conduct was motivated by her gender. (Opinion, RE 47, Page ID 683).

With regard to Wargo's discrimination claims under ELCRA and Title VII, the district court first concluded that Wargo could not establish a prima facie case of discrimination for lack of any direct evidence of gender-based discrimination. (Opinion, RE 47, Page ID 686). The district court then looked to whether Wargo could support her claim with circumstantial evidence under the *McDonnell Douglas* burden-shifting analysis and concluded that Wargo's "failure to identify any comparators" who engaged in similar conduct but treated differently was fatal to her gender discrimination claim. (Opinion, RE 47, Page ID 688). Finally, as to Wargo's retaliation claim, the district

court found that Wargo had failed to address causation and therefore had abandoned the claim. (Opinion, RE 47, Page ID 690).

Wargo sought reconsideration and MJR was ordered to respond to the reconsideration motion. (Reconsideration motion, RE 50, Page ID 736-892.). (Order, RE 51, Page ID 810). Following briefing by the parties, the district court denied reconsideration by opinion dated February 13, 2025. (Opinion, RE 53, Page ID 889-892). In that opinion, the district court concluded that Wargo's motion "merely restates her arguments without identifying appropriate grounds for relief". (Opinion, RE 53, Page ID 892).

## SUMMARY OF THE ARGUMENT

Plaintiff-Appellant Terra Wargo's complaint alleged that she suffered a hostile work environment and discrimination based on gender while employed by Defendant-Appellee MJR Partridge Creek Digital Cinema 14 and was terminated in retaliation for opposing discrimination, in violation of state and federal law. MJR contends that her complaint was correctly dismissed on summary judgment for several reasons.

First, Wargo's hostile work environment claim under the Elliott-Larsen Civil Rights Act (ELCRA) fails because the complained-of conduct was not so severe or pervasive that it altered the conditions of her employment. Rather, as found by the district court, the complained-of conduct was "bothersome" at best, and lacked any evidence that it was motivated by sex or gender. Further, the district court's dismissal of Wargo's claim of hostile work environment under ELCRA can also be affirmed on the alternative ground that MJR performed an adequate investigation of her complaints and took appropriate remedial action.

As to Wargo's discrimination claim stated under both ELCRA and Title VII, MJR contends that both fail as she cannot establish a prima facie case using either direct evidence or circumstantial evidence under the *McDonnell Douglas* burden shifting framework. Further, even assuming that Wargo could present a prima facie case of discrimination, she cannot establish that the basis for her termination was pretextual, and thus, the district court's order granting summary judgment can be affirmed on this

alternative ground.

Finally, as to Wargo's retaliation claim, the district court correctly concluded that Wargo failed to address causation as a necessary element of her retaliation claim under either Title VII or ELCRA and therefore abandoned the claim. However, again, even looking at the causation element of her retaliation claim on its merits, no evidence supports the inference that her termination was motivated by anything other than her intentional and repeated violations of company policy. Accordingly, the district court's order dismissed her retaliation claim can be affirmed on this alternative ground.

## STANDARD OF REVIEW

### I.     Review of Summary Judgment Ruling

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a grant of summary judgment, the Court views the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id*., at 586. Summary judgment is proper when the nonmoving party has had adequate time for discovery and yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the evidence is merely colorable or is not significantly probative, then a court may grant summary judgment. *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bishop v. Lucent Techs., Inc.,* 520 F.3d 516, 519 (6th Cir. 2008).

The Court of Appeals reviews the district court's summary judgment rulings on a *de novo* basis. *Baker v. Blackhawk Mining, LLC*, 141 F.4th 760, 766 (6th Cir. 2025).

## II.    Review of Denial of Reconsideration

Per E.D. Mich. LR 7.1(h)(1), a motion for reconsideration is properly filed pursuant to Fed. R. Civ. P. 59(e) or 60(b). Before the district court, Wargo requested reconsideration pursuant to Rule 59(e). Review under that rule is not unlimited. Rather, reconsideration may be granted only 1) because of an intervening change in the controlling law; (2) because evidence not previously available has become available; (3) to correct a clear error of law; or (4) to prevent manifest injustice. *See GenCorp, Inc. v. American Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir.1999). "It is well established ... that a district court does not abuse its discretion in denying a Rule 59 motion when it is premised on evidence that the party had in its control prior to the original entry of judgment." *Emmons v. McLaughlin,* 874 F.2d 351, 358 (6th Cir.1989).

The standard of review for a trial court's denial of a motion for reconsideration of a grant of summary judgment is generally *de novo. Columbia Gas Transmission Corp. v. Limited Corp.,* 951 F.2d 110, 112 (6th Cir.1991). However, review of a district court's refusal to consider evidence produced for the first time on a motion to reconsider is reviewed only for an abuse of discretion. *Id.; Huff v. Metropolitan Life Ins. Co.,* 675 F.2d 119, 123 (6th Cir.1982).

# ARGUMENT

**I.    The district court correctly concluded that Wargo could not support her hostile work environment claim under ELCRA because the complained-of conduct was not so severe or pervasive that it altered the conditions of her employment.**

To succeed on a hostile work environment claim, a claimant must show that (1) they were a member of a protected class; (2) they were subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable. *Chambers v. Trettco, Inc.*, 463 Mich. 297, 311, 614 N.W.2d 910 (2000). To support a hostile work environment claim, there must be evidence that the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Randolph v. Ohio Dep't. of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006).

Whether an environment is hostile is evaluated under a "reasonable person" standard. As explained by the Michigan Supreme Court in *Radtke v. Everett*, 442 Mich. 368, 387; 501 N.W.2d 155 (1993):

> …[T]he purpose of the act is to combat serious demeaning and degrading conduct based on sex in the workplace, and to allow women the opportunity to fairly compete in the marketplace. The reasonableness inquiry (i.e., objectively examining the totality of the circumstances) in a hostile work environment action, is simply a method of objectively determining whether a hostile work environment existed. The alternative would be to accept all Wargos' subjective evaluations of conduct, thereby

18

imposing upon employers liability for behavior that, for idiosyncratic reasons, is offensive to an employee. We believe that such a result is contrary both to the plain meaning of the statute, as well as the statute's overall purpose.

In *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the Supreme Court cautioned that standards for evaluating conduct under a hostile work environment theory must be "sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Id.*, at 788, quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998). Courts across the circuits applying these standards have rejected the following as creating a hostile work environment as a matter of law under the identical Title VII standards:

- *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351–52 (6th Cir. 2005) (holding that where the plaintiff alleged isolated incidents of her supervisor telling vulgar jokes, twice placing his vibrating pager on her thigh, and pulling on her overalls after asking what type of underwear she was wearing insufficient to meet hostile work environment standard);

- *Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 459-60 (6th Cir. 2004) (holding that allegations that the plaintiff's co-worker continuously commented on women's physical appearances and spoke at the shift meetings about sleeping with different women were insufficient to meet the hostile work environment standard);

19

- *Shepherd v. Comptroller of Public Accounts of Texas*, 168 F.3d 871, 872-75 (5th Cir.1999) (holding that several incidents over a two-year period, including comment "your elbows are the same color as your nipples," another comment that the plaintiff had big thighs, touching the plaintiff's arm, and attempts to look down the plaintiff's dress, were insufficient);

- *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir.1998) (holding that statement that the plaintiff had the "sleekest ass" in office plus single incident of "deliberately" touching the plaintiff's "breasts with some papers that he was holding in his hand" were insufficient);

- *Adusumilli v. City of Chicago*, 164 F.3d 353, 357 (7th Cir.1998) (holding actions insufficient to support hostile environment claim where co-employees teased the plaintiff, made sexual jokes aimed at her, repeated staring at her breasts with attempts to make eye contact, and four incidents of touching her arm, fingers or buttocks);

- *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1365-66 (10th Cir.1997) (holding five "sexually-oriented, offensive" statements over sixteen months insufficient to show hostile environment);

- *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 823-24 (6th Cir.1997) (reversing jury verdict and finding conduct insufficient to state actionable claim, where conduct over a four-month period involved repeated sexual

jokes, including telling the plaintiff she was "paid great money for a woman");

- *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir.1995) (holding nine instances of offensive behavior over seven months and one instance of simulated masturbation insufficient);

- *Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir.1993) (holding the plaintiff's claims--supervisor repeatedly asked about her personal life, told her how beautiful she was, asked her on dates, called her a dumb blonde, put his hand on her shoulder at least six times, placed "I love you" signs in her work area, and tried to kiss her once at a bar and twice at work--were insufficient).

Despite these case examples being either presented in support of MJR's motion or cited by the district court in its opinion, neither before the district court nor now on appeal does Wargo attempt to explain how the conduct she complains of is more severe or pervasive than the conduct deems insufficient to meet the required standard. Examining Wargo's claim in light of these examples demonstrates that even accepting her claims about Finnigan's conduct as truthful, she cannot maintain a hostile work environment claim.

First, it is questionable whether twice texting her asking her to join him at a local bar to discuss work issues is even objectionable to her, let alone under a

reasonable person standard. While Wargo claimed that it was not welcome to her because of her lack of relationship with Finnigan, she admitted to joining other former General Managers at meetings outside of the confines of the MJR theater for social interactions.[2]

Even adding in the meeting on July 13, 2021 in the MJR offices into the examination of the circumstances of Wargo's employment, she does not claim that there was anything of a sexual nature about that conflict. Rather, under her own description of events, they loudly argued about what Wargo perceived was his lack of respect and communication and he touched her arm for 5-10 seconds as she brushed past him to leave the meeting.

Wargo argues that the district court made an improper credibility determination and should have drawn "all reasonable inferences" in her favor in assessing the complained-of conduct. A review of the district court's opinion does not evidence any such error. The standard to review claims of hostile work environment is not a subjective one, based on each individual claimant's sensitivities, but rather an objective "reasonable person" standard. See, *Radtke*. Wargo's argument before the district court and again on appeal appears to be that

---

[2] On appeal, Wargo takes issue with the description in the lower court that she "readily" joined her former GMs socially. Of course, the relevance is not whether she jumped excitedly; it is that she clearly did not find social interactions with management members of the opposite sex offensive if she liked working with them.

because she was offended, that is enough to bring her case to the jury.[3] Respectfully, that is simply not the standard under ELCRA.

**II.     The district court's dismissal of Wargo's claim of hostile work environment under ELCRA can also be affirmed on the alternative ground that MJR performed an adequate investigation of her complaints and took appropriate remedial action.**

Finally, while the district court was not required to consider whether MJR's investigation following her complaints due to its conclusion that her complained-of conduct was insufficient as a matter of law to rise to an actionable claim, this Court on appeal may consider whether this alternative ground supports the district court's decision, should it find an error with the district court's conclusion on Wargo's prima facie case of hostile work environment. See e.g., *Thompson v. Skipper*, 981 F.3d 476, 480 (6th Cir. 2020), quoting *Hogan v. Jacobson*, 823 F.3d 872, 884 n.2 (6th Cir. 2016) ("…this court 'may affirm on any grounds ... even if different from the reasons of the district court.'"). An employer may avoid liability in a hostile environment case "if it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment." *Downer v Detroit Receiving Hosp*, 191 Mich. App. 232, 234; 477 N.W.2d 146 (1991).

---

[3] "This evidence must be viewed in the light most favorable to her, and the Court must accept that she found these texts to constitute sexual harassment." (Wargo brief on appeal, p. 15).

In *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 919 (Mich. 2000), the Michigan Supreme Court considered the employer's duty on notice of complaints of alleged sexual harassment and concluded "that the relevant inquiry concerning the adequacy of the employer's remedial action is whether the action reasonably served to prevent future harassment of the plaintiff." In affirming summary disposition and finding an employer's investigation satisfactory following complaints of sexual harassment, the Court in *Stacy v. Shoney's Inc.*, 955 F. Supp. 751, 756 (E.D. Ky. 1997), citing *Bouton v. BMW N. Am., Inc.,* 29 F.3d 103, 110 (3rd Cir. 1994), recognized that the employer "is not obligated to provide Plaintiff the remedy of her choice. Effectiveness is measured not by the extent to which the employer disciplines or punishes the alleged harasser, but rather if the steps taken by the defendant halt the harassment."

Here, MJR investigated by speaking with both participants, watched available video and ultimately provided Finnigan with a warning regarding his behavior and placed him on a Performance Improvement Plan. The offer to Wargo to transfer if she so desired was not "forced" upon her – it was her choice as she admitted, because she did not want to work with Finnigan under any circumstances.

> Q.    Okay. How did it come that you transferred to a
>        different location?
> A.    In that meeting Melissa had offered that I could
>        transfer to Marketplace and I was given time to think
>        about that, and then she had sent over a transfer offer
>        letter and we also discussed kind of the details but not

really in a zoom call.

Q.     Okay. And you accepted the transfer?

A.     Yes.

(Wargo Tr., RE 39-2, Page ID 280.).

MJR was not obligated to terminate or transfer Finnigan simply because Wargo wanted to stay at Partridge Creek and not work with Finnigan. "In determining the existence of an adverse employment action, courts must keep in mind the fact that 'work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action.'" *Pena v. Ingham Cnty. Rd. Comm'n*, 255 Mich. App. 299, 660 N.W.2d 351, 358-59 (2003), quoting *Blackie v Maine*, 75 F.3d 716, 725 (1st Cir. 1996). "The bottom line is that, in cases involving a hostile work environment claim, a plaintiff must show some fault on the part of the employer." *Chambers*, 463 Mich., at 312. Notably, Wargo does not complain about any conduct by Finnigan after the initiation of the investigation or the issuance of the warning and Performance Improvement Plan to him, even before her transfer. In other words, the steps undertaken by MJR worked. The transfer was an accommodation which was offered to her, and which she was free to accept or reject

Finally, Wargo implies that something nefarious is going on and attempts to create a factual dispute because there are two different versions of her incident

report. In fact, the report designated MJR 064 appears to have been a version of the incident report which combined elements of both Wargo's report and Finnigan's report; an error caused when the reports were saved with identical names. However, most importantly, the report had nothing to do with MJR's handling of Wargo's complaint. Rather, the report was submitted by her after she met with Kincaid and Hattle and after she submitted her three-page memo outlining her concerns about Finnigan. She even concedes that she is "not sure if this is completely necessary after our meeting with Joel but I figured I would fill it out regardless." (Email, RE 39-10, Page ID 462.). "'The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.' A factual dispute is 'material' if, under the governing law, its resolution might affect the action's outcome. A factual dispute is 'genuine' if a reasonable factfinder could return a verdict for the nonmoving party." *DXS, Inc. v. Siemens Med. Sys.*, 100 F.3d 462, 466-67 (6th Cir. 1996), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The erroneous report had nothing to do with MJR's investigation or handling of Wargo's complaint or her later termination and Wargo offers no explanation as to how its existence is material to the outcome of this case. Instead, Wargo attempts to create a great conspiracy out of a documentary error that had no impact on her claim or the investigation of it.

There is no dispute that MJR investigated Wargo's complaint, and even though they found nothing of a sexually harassing or discriminatory nature, still took remedial action to accommodate Wargo's request that she not work with Finnigan by offering her the option to transfer to a different theater. Wargo admitted that she voluntarily accepted the transfer offer and that nothing changed about her job at the new location.

While employment discrimination claims are inherently fact intensive, courts also recognize that "motions for judgment as a matter of law can police the baseline for hostile environment claims." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 n. 8 (5th Cir.1999). The district court's decision does exactly that in this case.

**III.    The district court correctly concluded that Wargo could not present a prima facie case of discrimination under either Title VII or ELCRA using either direct evidence or circumstantial evidence under the *McDonnell Douglas* burden shifting framework.**

Under Title VII, claimants may assert disparate impact or disparate treatment claims (or both). Under a disparate treatment theory, a claimant alleges that they were the victim of intentional discrimination. Here, Wargo's complaint sounds in disparate treatment only. "A plaintiff asserting a disparate-treatment claim must prove an employer's discriminatory motive and connect that motive to a particular adverse employment decision." *Tartt v. Wilson Co.*, 592 Fed. App'x. 441, 444 (6th Cir. 2014). Discriminatory intent may be proven with either direct or circumstantial

evidence. If circumstantial evidence is relied upon, a reviewing court applies the "burden shifting" framework initially adopted by the United States Supreme Court in *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973).

Under the *McDonnell Douglas* framework, the plaintiff bears the burden to demonstrate a *prima facie* case of unlawful discrimination; the burden then shifts to the employer to articulate a legitimate, non-discriminatory explanation for its actions; finally, the burden shifts back to the plaintiff to show that the employer's explanation is pretext. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). To establish a prima facie case, a plaintiff must establish facts demonstrating that 1) they are a member of a protected class, 2) they were subject to an adverse employment decision, 3) that they were qualified for the position, and 4) that they were replaced by someone outside the protected class or that similarly situated employees outside of the protected class were treated more favorably. *Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir. 2002). Claims of disparate treatment discrimination under ELCRA are generally evaluated under the same standards as claims brought under Title VII. See, e.g., *Pena v. Ingham Cty. Rd. Comm'n*, 255 Mich. App. 299; 660 N.W.2d 351 (2003).

**A.    The district court correctly concluded that Wargo could not establish a prima facie case of discrimination based on sex with direct evidence.**

Direct evidence "consists of facts that, 'if believed, require [] the conclusion

that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 302 (6th Cir. 2016) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)). "[W]hen direct evidence is provided, no inferences are needed in order to conclude that . . . discrimination is afoot." *Id.*

Here, Wargo contends that Finnigan's text messages to her asking her to join him at Bar Louie serve as the basis for her discrimination claim.[4] On their face, they are not discriminatory nor harassing. They are simply invitations which she was free to refuse – and which she did without any repercussion to her. Any other conclusion requires an inference about the meaning or intent behind the invitation, thereby defeating any claim that the requests are – on their face – direct evidence of discrimination. The same holds true for Wargo's claims about Kincaid and Hattle choosing to believe Finnigan over her. The district court correctly concluded that Wargo could not establish a prima facie case of discrimination based on sex with direct evidence.

**B.      The district court correctly concluded that Wargo could not establish a prima facie case of discrimination based on sex with direct evidence.**

Similarly, under the circumstantial evidence burden-shifting framework,

---

[4] Wargo also testified about statements she was not present for and did not hear herself, however, these alleged hearsay statements are not admissible. See *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007).

29

Wargo cannot establish two of the necessary four elements to establish a prima facie case. MJR concedes that Wargo is a member of a protected class and presumes she was facially qualified for the manager position. However, the circuit court correctly determined that she was unable to establish that she was subject to an adverse employment action or that she was treated less favorably than a similarly situated employee outside of the protected class.

Following Wargo's complaints to Kincaid and Hattle, she was given a written warning based on her admissions about her conduct during the July 13th meeting between herself and Finnigan. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). Title VII cases make clear that absent a significant change in the plaintiff's employment status, written warnings do not constitute adverse employment actions. See, e.g., *Creggett v. Jefferson Cty. Bd. of Educ.*, 491 F. App'x 561, 566 (6th Cir. 2012).

Further, her transfer was an accommodation offered to her by MJR based on her stated desire to no longer work with Finnigan and was elected by her voluntarily. Such voluntary actions do not satisfy the adverse employment action requirement absent evidence that the new position was accepted as a result of "conditions so

intolerable that a reasonable person would feel compelled to leave." *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 920 (6th Cir. 2014), quoting *Sharp v. City of Houston*, 164 F.3d 923, 934 (5th Cir. 1999). See also *White v. Burlington N. & Santa Fe Ry. Co.*, 310 F.3d 443, 450 (6th Cir. 2002).

Finally, there is no evidence that she was treated any differently from someone outside of the protected class. In fact, the evidence shows that MJR disciplined Finnigan more severely via written warning and also put him on a Performance Improvement Plan, while Wargo only received a written warning. The district court found that her failure to identify any comparators was fatal to her claim.

Both before the district court and again on appeal, Wargo fails to even address what her alleged theory of discrimination is or offer any legal analysis of the requirements to maintain such an action. Instead, she simply restates her version of events and raises anew the fact that Finnigan was transferred to Partridge Creek in the first instance as purported evidence of discrimination.

As to the decision to place Paul Finnigan in the position at MJR Partridge Creek in the first place, Wargo's complaint has never alleged that this decision was discriminatory, and indeed, she never alleged any discriminatory basis for that decision during her deposition or many meetings with MJR management or her EEOC Charge of Discrimination. As such, Wargo's claim in her brief that "there is no real explanation for the original transfer" raises no actionable issue of fact. Indeed

at her deposition, Wargo admitted that she had been offered a promotion to a general manager position which she declined because she wanted to stay at the location she was familiar with and continue working with the employees she already knew. (Wargo Tr., RE 39-2, Page ID 270.).

The district court's determination that Wargo could not establish a prima facie case of discrimination with either direct or circumstantial evidence should be affirmed.

**VI.    Even assuming that Wargo could present a prima facie case of discrimination, she cannot establish that the basis for her termination was pretextual, and thus, the district court's order granting summary judgment can be affirmed on this alternative ground.**

Before the district court, MJR presented an alternative ground in support of summary judgment, which the district court did not reach because of its decision regarding the lack of a prima facie case. Even assuming that Wargo could present a prima facie case of discrimination, her claim is still subject to summary dismissal where MJR is able to articulate a non-pretextual, legitimate, non-discriminatory explanation for its actions. Once that standard has been met, "the burden shifts back to plaintiff to demonstrate that Defendant's 'proffered reason was not the true reason for the employment decision.'" *Spengler v. Worthington Cylinders*, 615 F.3d 481, 492 (6th Cir. 2010). Here, the reason for Wargo's termination is clearly supported by Wargo's own admissions that she violated MJR's policies.

A plaintiff may demonstrate that an employer's explanation is not credible by

demonstrating that the proffered reasons (1) had no basis in fact, (2) did not actually motivate the employer's action, or (3) were insufficient to motivate the employer's action. *Harris v. Metro. Gov't of Nashville & Davidson Cty.*, 594 F.3d 476, 486 (6th Cir. 2010); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). A defendant's proffered reason cannot be proved to be a pretext "unless it is shown both that the reason was false, and that discrimination [or retaliation] was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). Further, pretext cannot be established by questioning the business judgment of the employer. *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 490 (6th Cir. 2000). See also *Brocklehurst v. PPG Indus.*, 123 F.3d 890, 898 (6th Cir. 1997)("The Elliott-Larsen Act proscribes discrimination, not unfair treatment.")

Wargo's admissions readily establish that the reason for her termination – that she continued to discuss personnel matters with peers and subordinates – actually took place after she was warned that such actions were a terminable offense. There is simply no evidence to suggest that this was not the basis for her termination. "The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. Rather, employers may not hire, fire, or promote for impermissible, discriminatory reasons." *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir.1996). Even where an employer wrongly believes an employee has violated company policy, it does not discriminate in violation of Title VII if it acts

on that belief. See, e.g. *Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir. 1980). Here, while Wargo may disagree with MJR's decision, that is insufficient to establish a discriminatory motive. Accordingly, this Court could affirm summary judgment on this alternative ground should it find any error in the district court's reasoning.

**V.    The district court correctly concluded that Wargo failed to address causation as a necessary element of her retaliation claim under either Title VII or ELCRA as a matter of law.**

To establish a prima facie case of retaliation, Wargo must show that (1) she engaged in protected activity; (2) that MJR knew of her protected activity; (3) that MJR took an adverse employment action against her and (4) there was a causal connection between the protected activity and the adverse employment action. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Close temporal proximity by itself is not enough to establish causation for purposes of a retaliation claim. *West v Gen Motors Corp*, 469 Mich. 177, 186; 665 N.W.2d 468 (2003). While causation under ELCRA-based retaliation claims requires only that the protected activity be a "significant factor" in the adverse employment action, neither causation standard is met in this case. *Barrett v Kirtland Community College*, 245 Mich. App. 306, 315; 628 N.W.2d 63 (2001).

Before the district court, Wargo failed to even address the causation argument, resulting in the district court's ruling that she had abandoned the claim. (Opinion, RE 47, Page ID 690.) On reconsideration, the district court reiterated that Wargo could not use that motion as an opportunity to "raise arguments or present evidence that could have been raised prior to entry of judgment," citing *Brumley v UPS*, 909 F.3d 834, 841 (6th Cir. 2018). On appeal, Wargo again fails to explain how the district court abused its discretion in finding that her failure to address the causation issue was fatal. For this reason, this Court should affirm the district court's dismissal of Wargo's retaliation claim.

## VI.    The district court's dismissal of Wargo's retaliation claim can also be affirmed on the alternative ground that she cannot establish causation.

However, even addressing causation on the merits, Wargo's argument is lacking legal support. There is certainly a question as to whether Wargo can even claim to have been engaged in a protected activity when she submitted her complaint to Kincaid and Hattle. Her three-page memo only discussed work-related complaints with a vague mention of "uncomfortable texts/language – nor work related". Further, the written statement she submitted after the investigation only refers to "inappropriate behavior in the workplace". To oppose a practice under Title VII, the complaint must "put her employer on notice that her complaint concerns statutory rights." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 373 (6th Cir. 2013). "…[W]e

hold that a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice." *Booker v. Brown & Williamson Tobacco Co*., 879 F.2d 1304, 1313 (6th Cir. 1989).

Wargo's argument now appears to be that she was engaging in protected activity by "helping someone else with their discrimination claim." (Wargo brief on appeal, p. 22). However, the undisputed facts establish that Wargo was not assigned to Partridge Creek any longer on September 15, 2021 and by her own admission, she had no work responsibilities at that location. (Wargo Tr., RE 39-2, Page ID 284.). Wargo further admitted that while in the Partridge Creek office for "possibly" up to three hours, she discussed personnel matters with Vennard and another employee who was in the office. (Wargo Tr., RE 39-2, Page ID 284.) According to Wargo, she was "possibly" assisting Vennard in preparing a complaint form for another employee during the three-hour meeting at Partridge Creek, but Wargo claimed she did not report the complaint herself to MJR's HR department because Vennard was already doing so. (Wargo Tr., RE 39-2, Page ID 284.). In fact, the uncontroverted evidence establishes that Vennard had already submitted the complaint days before the three-hour meeting and there was nothing for Wargo to "assist" her.

There is simply no evidence that her termination was motivated by MJR's desire to retaliate against her for assisting Vennard with Rizo-Llamas's already filed complaint. Had Wargo not violated company policy by continuing to insert herself

into personnel matters not involving her - in an apparent effort to continue her personal vendetta against Finnigan - she would not have been terminated. MJR's policy of requiring management level employees to not discuss personnel matters with their peers and subordinates is reasonable and not in violation of any statute or public policy. Just as Wargo is entitled to present her concerns to MJR management and expect them to be kept in confidence, other employees – including Finnigan – are entitled to have that same expectation. The record is devoid of any evidence from which a causal connection could be established between either Wargo's complaints about discrimination and harassment or her alleged act of assisting someone else in reporting discrimination and her termination.

## CONCLUSION

The evidence shows that even before Terra Wargo met Paul Finnigan, she was hostile to him and intended to take steps to see him fired. When that didn't happen, she decided to escalate matters by involving herself in personnel matters which did not involve her and about which she had already been warned not to do. As a member of the management team, she was expected to follow company policy and set an example for junior employees. She failed in this endeavor, intentionally and repeatedly. The district court correctly dismissed her complaint and denied reconsideration, rulings which this Court of Appeals should affirm in their entirety.

<div style="margin-left:auto">

Respectfully submitted,

/s/ Elizabeth L. Parker
Elizabeth L. Parker
Speaker Law Firm
819 N Washington Ave.
Lansing, MI 48906
(517) 482-8933
eparker@speakerlaw.com
*Attorney for Appellee*

/s/ Thomas H. W. Barlow
Thomas H. W. Barlow
Kostopoulos Rodriguez, PLLC
550 W. Merrill St., Ste. 100
Birmingham, MI 48009
(248) 268-7800
tbarlow@korolaw.com
*Attorney for Appellee*

</div>

Dated: August 7, 2025

## CERTIFICATE OF COMPLIANCE

The undersigned attests that this pleading complies with the typeface limitations of Fed. R. App. P. 32(a)(4), (5), and (6) and was prepared using Microsoft Word, with Times New Roman 14-point proportional type. This brief contains 9,252 words in compliance with Fed. R. App. P. 32(a)(7).

Respectfully submitted,

/s/ Elizabeth L. Parker
Elizabeth L. Parker
Speaker Law Firm
819 N Washington Ave.
Lansing, MI 48906
(517) 482-8933
eparker@speakerlaw.com
*Attorney for Appellee*

Dated: August 7, 2025

I

## CERTIFICATE OF SERVICE

The foregoing brief was served on all counsel of record via the Court's efiling system on August 7, 2025.

Respectfully submitted,

/s/ Elizabeth L. Parker
Elizabeth L. Parker
Speaker Law Firm
819 N Washington Ave.
Lansing, MI 48906
(517) 482-8933
eparker@speakerlaw.com
*Attorney for Appellee*

## ADDENDUM

| Record Entry No. | Document Description | ECF Page Numbers |
|---|---|---|
| RE 1 | Complaint | Page ID 1-19 |
| RE 39 | Defendant's Motion for Summary Judgment with Supporting Transcripts and Exhibits | Page ID 230-479 |
| RE 47 | Opinion Granting Summary Judgment | Page ID 662-691 |
| RE 48 | Judgment | Page ID 692 |
| RE 50 | Plaintiff's Motion for Reconsideration | Page ID 736-765 |
| RE 51 | Order Directing Response | Page ID 810 |
| RE 53 | Opinion Denying Reconsideration | Page ID 889-892 |
| RE 54 | Notice of Appeal | Page ID 893 |