No. 25-1143

In The United States Court Of Appeals
For The Sixth Circuit

TERRA WARGO,

Plaintiff-Appellant,

v.

MJR PARTRIDGE CREEK DIGITAL CINEMA 14,

Defendant-Appellee

_____

On Appeal from the United States District Court
for the Eastern District of Michigan
Docket No. 23-cv-12524
The Honorable Laurie J. Michelson
Magistrate Judge Anthony P. Patti

**PLAINTIFF-APPELLANT'S REPLY BRIEF**

**ORAL ARGUMENT REQUESTED**

Dated: September 18, 2025

Respectfully Submitted by:
Carla D. Aikens, P.L.C.
/s/ Carla D. Aikens
Carla D. Aikens (P69530)
615 Griswold Street, Suite 709
Detroit, Michigan 48226
Carla@aikenslawfirm.com
Phone: (844) 835-2993
Fax: (877) 454-1680
*Attorney for Plaintiff-Appellant*

## ARGUMENT

**A. Defendant's "Severe or Pervasive" Argument is Inconsistent with the Record**

Defendant argues that Finnigan's conduct was not sufficiently "severe or pervasive" to constitute a hostile work environment under ELCRA and Title VII. First, this is a question of fact. Second, this is flatly inconsistent with the record. Plaintiff testified and Defendant does not dispute that General Manager Paul Finnigan repeatedly invited her to bars during work shifts, sent text messages with suggestive undertones ("I can show you everything…if you let me"), and escalated to physical intimidation by blocking her exit and grabbing her arms.

Courts have long recognized that physical intimidation coupled with repeated unwanted advances crosses the "severe or pervasive." This argument ignores controlling Sixth Circuit precedent and the factual record. Courts, as Plaintiff already briefed, consider whether harassment was so severe and pervasive as to constitute a hostile work environment to be quintessentially a question of fact.

The Sixth Circuit has stated in *Smith v Rock-Tenn Servs, 813 F3d 298, 310 (CA 6, 2016)* that "we consider whether harassment was so severe and pervasive as to constitute a hostile work environment to be 'quintessentially a question of fact.'" Similarly, *Randolph v Ohio Dep't of Youth Servs, 453 F3d 724,733 (CA 6, 2006)* explains that "[a] hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Also, in *Radtke v Everett*, 442 Mich 368, 398; 501 NW2d 155 (1993) it has been recognized that even a "[a] single incident may be sufficient

to constitute a hostile work environment if severe harassment is perpetrated by an employer in a closely knit working environment."

Here, unlike the isolated comments in Defendant's cases, Finnigan's conduct was repeated and escalating: inviting Wargo and other female subordinates to bars during working hours, sending text messages stating "I have a lot to show and teach … you'll see," "I wanted to treat you to dinner", physically blocking her exit, and grabbing her arm for several seconds. Defendant's position disregards the Sixth Circuit's clear instruction that courts must consider the totality of the circumstances, including frequency, severity, and whether the conduct is physically threatening. The question is whether Plaintiff has submitted sufficient evidence from which a jury could make a determination, which she has done here.

### B. Defendant's "Adequate Investigation" Argument is Unsupported by the Record

Defendant alternatively argues that even if harassment occurred, it cannot be liable because it conducted an adequate investigation and took remedial action. Here, HR Manager Melissa Hattle admitted she and Vice President Kincaid had access to an altered version of Wargo's harassment report; changing the date, incident details, and the relief requested from "remove him from the company" to "no specific action." Kincaid, a longtime colleague of Finnigan's, never personally interviewed Wargo about the core allegations despite being aware of them.

This failure undermines any claim of a "prompt and appropriate" investigation. The courts has repeatedly held that inadequate or biased investigations are themselves evidence of discrimination or retaliation. The Court of Appeals of Michigan has emphasized in *Downer v. Detroit Receiving Hosp.,* 191 Mich App 232, 234; 477 NW2d 146, 234 (1991) that "[a]n employer may avoid liability for such a claim if it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment." But an

employer's investigation is only a defense when it is prompt and appropriate. Under these precedents, a jury could find Defendant's investigation was neither prompt nor appropriate, but rather an attempt to insulate Finnigan and retaliate against Wargo.

**C.     Defendant's "Lack of Comparators" Argument Misstates the Law**

Defendant's assertion that Wargo's claims fail because she allegedly lacks "comparators" misapplies the *McDonnell Douglas* framework and illustrates precisely the problem Justice Thomas and Judge Newsom have identified. In his dissent from the denial of certiorari in *Hittle v. City of Stockton*, 145 S. Ct. 759, 761 (2025), Justice Thomas criticized courts' unyielding adherence to *McDonnell Douglas* at the summary-judgment stage, noting that the case itself arose from a bench trial; not Rule 56 and warning that "at least some of *McDonnell Douglas*'s applications at summary judgment strike me as difficult to square with Federal Rule of Civil Procedure 56." Likewise, Judge Newsom, concurring in *Tynes v. Florida Dept. of Juvenile Justice*, 88 F.4th 939, 952–54 (11th Cir. 2023) (Newsom, J., concurring), explained that rigid application of *McDonnell Douglas* has the "topsy-turvy" effect of dismissing claims supported by strong circumstantial evidence of discrimination simply because a plaintiff cannot "check all of the *McDonnell-Douglas*-related doctrinal boxes"; for example, because she lacks a textbook or "perfect" comparator; even though her circumstantial evidence is far stronger, while weaker claims with a nominal comparator are allowed to proceed. *Id.* at 955.

That is exactly what Defendant invites this Court to do here. Wargo has presented abundant circumstantial evidence that Finnigan treated female subordinates differently from males and that HR altered her harassment report to shield him. Under Rule 56's plain text, which focuses on whether there is a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), such evidence is more than enough to allow a jury to decide whether Defendant

intentionally discriminated against her, regardless of whether she identifies an ideal comparator.

Defendant's theory, if accepted, would sanction a profoundly dangerous rule: that an employer may terminate an employee at least in part; for resisting or reporting a supervisor's sexual advances so long as it can recite a facially neutral rationale and point to the absence of a "perfect" comparator. Such a rule is irreconcilable with Title VII, the ELCRA, and Rule 56. Granting summary judgment on such a record would invert the very purpose of the procedure—transforming it from a filter for meritless claims into a shield for retaliation and discrimination, the precise misconduct these statutes were enacted to prevent. If courts endorse the notion that an employer can terminate an employee who resists or reports sexual advances and still win summary judgment simply by asserting a neutral rationale and pointing to the absence of a "textbook" comparator, then the *McDonnell Douglas* framework has become a trap rather than a tool for uncovering discrimination.

Title VII and the ELCRA are not mere procedural hurdles; they are substantive guarantees of equal employment opportunity and protection against retaliation. Allowing an employer to escape liability for terminating an employee in part for resisting or reporting sexual harassment undermines the core purposes of those statutes and guts the constitutional role of the jury at summary judgment. Where, as here, the record brims with evidence of escalating sexual misconduct, disparate treatment, a manipulated investigation, and temporal proximity between protected activity and termination, Rule 56 requires that all reasonable inferences be drawn in Wargo's favour and the case be submitted to a jury. To hold otherwise would make summary judgment a mechanism for insulating, rather than deterring, retaliation and harassment.

The Sixth Circuit has explained that a plaintiff may rely on circumstantial evidence and need only make a "minimal" showing at the prima facie stage. As emphasized by United States Court of Appeals for the Sixth Circuit in *Tartt v. Wilson Co.,* 592 F App'x 441, 444-45 (6th. Cir. 2014) that a plaintiff asserting a disparate treatment claim must prove an employer's discriminatory motive and connect that motive to a particular adverse employment decision. A plaintiff may prove discriminatory intent through direct or circumstantial evidence. *Tartt* further states that:

> Where a plaintiff seeks to prove discriminatory intent based solely on circumstantial evidence, courts apply the three-step, burden-shifting framework of *McDonnell Douglas* []. Under this framework, a plaintiff must first establish a prima facie case of discrimination. [] If he is successful, then the employer must respond with a legitimate, non-discriminatory reason for the adverse action in question.

*Id.* at 445. Wargo has easily met this standard. Finnigan admitted he only invited female subordinates and not male ones and initiated personal messages during work hours. This gender-based difference alone is enough circumstantial evidence to satisfy *Tartt* and shift the burden. Defendant's contrary reading would improperly raise the evidentiary threshold at the summary judgment stage.

**D.    Defendant's "Pretext" Argument Fails Under Established Precedent**

Defendant argues Wargo cannot show pretext because her termination was for "performance". The United States Court of Appeals, in *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994) has recognized that "[p]retext may be shown 'either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"

Here, Defendant's reasons shift and contradict the record. Here in this case, the defendant could not identify any written policy making Wargo's conduct an "immediately

6

terminable offense." The termination came just weeks after she helped another employee lodge a sexual-harassment complaint.

Defendant argues that its actions toward Plaintiff were neutral and based solely on policy violations. But Defendant's own record reveals starkly different treatment between Paul Finnigan, the male manager accused of repeated misconduct, and Terra Wargo, the female manager who reported and opposed that misconduct. Finnigan, despite multiple complaints; including allegations of grabbing a subordinate's buttocks, repeated unwanted text messages, and physically blocking Wargo in his office and was given only a written warning and a performance improvement plan. In contrast, Wargo, who engaged in the protected activity of reporting and assisting with harassment complaints, was first transferred and then terminated entirely.

The Sixth Circuit has long held that such disparate enforcement is classic evidence of discrimination and pretext. In *Clayton v Meijer, Inc,* 281 F.3d 605 (6th Cir. 2002), the court explained that "[s]howing that similarly situated non-protected employees were treated more favorably than a plaintiff is not a requirement but rather an alternative to satisfying the fourth element of a prima facie case…"

Even where an employer articulates a facially legitimate reason, the fact that the employer treated the plaintiff less favorably than a similarly situated employee outside the protected class can itself create a triable issue of discrimination.

Here, Finnigan and Wargo were both accused of policy violations related to workplace behaviour. Finnigan was the alleged harasser, and Wargo the victim and whistleblower. Despite this, Finnigan retained his managerial position and was merely placed on a performance plan, while Wargo lost her job. This inverted discipline cannot be squared with a neutral application of policy.

### E. Summary Judgment Standards Require Jury Resolution of Disputed Facts

Defendant argues that summary judgment was proper because its managers and HR representatives have explained their reasons for disciplining and terminating Wargo and because no reasonable jury could disbelieve those explanations. This is incorrect. The Supreme Court's decision in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), is the definitive statement on the limits of judicial power at the summary judgment stage. At page 255, the Court made explicit:

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favour.

This language is not a passing remark but the governing principle for every federal court. It means that when a plaintiff presents evidence contradicting an employer's stated reasons or showing inconsistencies in its explanation, the court cannot resolve which side is more credible. Instead, it must assume the plaintiff's evidence is true and draw every fair inference in the plaintiff's favour. Only a jury, not a judge, has the constitutional role to weigh testimony, evaluate demeanour, and decide who is telling the truth.

The record contains genuine disputes on virtually every material point: whether Wargo was ever interviewed about her harassment complaint, whether her original report was altered to soften the requested relief, whether the confidentiality policy actually prohibited her conduct, and whether Finnigan; the alleged harasser, received lenient treatment compared to Wargo, the whistleblower. These are not minor disagreements but direct conflicts in testimony and documentation. Under *Anderson*, the district court was required to believe Wargo's evidence at this stage and to draw every reasonable inference in her favour; not to credit Defendant's testimony over hers.

For these reasons, *Anderson* requires reversal. The conflicting testimony and documentary evidence about HR's handling of the complaints, the editing of the harassment report, the selective application of policies, and the reasons for Wargo's termination are precisely the type of credibility and factual disputes that must be resolved by a jury, not by summary judgment. Under *Anderson*, the only proper course is to remand this case for trial so a jury can weigh the evidence, assess credibility, and draw its own inferences about Defendant's true motives.

**F.    Defendant Cannot Escape the Clear Causal Link Between Protected Activity and Termination**

Defendant argues Wargo cannot establish the causal link between her protected activity and her termination. This is incorrect. The Sixth Circuit has explicitly held that temporal proximity, especially when combined with other retaliatory indicators, can satisfy causation at the prima facie stage. In *Mickey v Zeidler Tool & Die Co,* 516 F.3d 516, 525 (6th Cir. 2008), the court explained:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.

This principle directly applies here. Wargo engaged in classic protected activity by reporting sexual harassment and assisting another employee's harassment complaint. Within mere weeks of these actions, she was abruptly transferred, deprived of significant job duties, placed under heightened scrutiny, and ultimately terminated. Such a swift sequence of escalating adverse actions is precisely the kind of temporal proximity *Mickey* holds is sufficient for a reasonable jury to infer retaliation.

Moreover, the proximity here is reinforced by additional retaliatory indicators. HR altered Wargo's harassment report, changing key details and softening her requested relief. Finnigan, the alleged harasser, was not disciplined under any confidentiality policy and remained in his position. Wargo, by contrast, was subjected to discipline under an ambiguous policy no one could explain. This combination of immediate timing and obvious disparate treatment magnifies the inference of retaliatory intent.

When the temporal connection is so tight; as it is here, and especially where other retaliatory markers are present, a jury question is created as a matter of law. Defendant's attempt to argue "no causation" asks this Court to ignore the very rule *Mickey* established. Applying *Mickey* to these facts, the district court was required to view the timing and surrounding circumstances in the light most favourable to Wargo and submit the issue of causation to the jury.

## CONCLUSION

WHEREFORE, For the reasons stated above, Appellant respectfully requests that this Honourable Court reverse the trial court's ruling granting summary judgment and remand this case for further proceedings including full discovery and trial on the merits.

Dated: September 18, 2025

/s/ Carla D. Aikens
Carla D. Aikens (P69530)
CARLA D. AIKENS, P.L.C.
Attorneys for Plaintiff
615 Griswold Suite 709
Detroit, MI 48226
carla@aikenslawfirm.com

## CERTIFICATION OF WORD COUNT

A word count of Plaintiff-Appellant's Reply Brief has been conducted via Microsoft Word, which yielded a total of 2,516 words as required under Adm. File No.2019-16and explained in MCR7.212.

Dated: September 18, 2025                              /s/ Carla D. Aikens

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses as directed on the pleadings on September 18, 2025

/s/ Carla D. Aikens